UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>— against —<br><br>ALEXIS ESCOBAR,<br><br>Defendant. | **15-cr-150 (ARR)**<br><br>**Not for print or electronic publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

Alexis Escobar has moved, pursuant to 18 U.S.C. § 3582(c)(1)(A), for an order reducing his sentence to time-served because he alleges that his diabetes increases his risk of severe illness if he contracts COVID-19, and that Federal Correctional Institution ("FCI") Danbury has not taken sufficient steps to prevent spread of the virus. Def.'s Mot. for Sentence Reduction ("Def.'s Br.") 1, ECF No. 115. The government opposes, maintaining that Escobar has not demonstrated that extraordinary and compelling reasons justify his release and that the Section 3553(a) factors weigh against a reduced sentence. Govt. Mem. in Opp. to Def.'s Mot. for Sentence Reduction ("Govt Opp.") 2, ECF No. 116. For the reasons set forth below, Escobar's motion is denied.

## BACKGROUND

### A. Alexis Escobar

In 2016, Escobar pled guilty to six counts of Hobbs Act Robbery and one count of possessing and brandishing a firearm during a crime of violence. Presentence Investigation Report ("PSR") 3–4. He and an accomplice committed a string of armed robberies of cell phone stores over the course of multiple years. *Id.* In each of the robberies, Escobar and his accomplice entered

the stores wearing masks, threatened the stores' occupants by brandishing a firearm, restrained the employees and customers present by binding their hands and feet together using zip ties, and stole cash and merchandise. *Id.* at 5–6. In total, the two robbed ten retail stores and threatened or restrained forty victims. *Id.* at 7. None of victims suffered physical injuries, but they may have suffered psychological injuries. *Id.* I sentenced Escobar to 162 months' imprisonment followed by five years of supervised release. Judgment, ECF No. 94. He is currently incarcerated at FCI Danbury, and is scheduled to be released on December 28, 2027. Gov't Opp. 2.

Escobar has taken several classes while incarcerated, including vocational courses, a drug education class, and a nutrition class. Def.'s Br. 5, 57. He reports that he has enrolled in these classes "to better [him]self as a person and have something to look forward to once released." *Id.* at 5. He has three children, and is married to the mother of his youngest child. PSR at 17. If released, he would live with his spouse and child. Def.'s Br. 4.

Escober is 48 years old. He reported no health issues at the time of his sentencing, *id.* and 17, but developed type 2 diabetes while in prison. *See generally* Medical Records, Ex. B, Govt. Opp.. Escobar takes metformin to treat his diabetes, which was recently decreased from 850 mg twice daily to 500 mg twice daily. *Id.* at 10. His diabetes appears to be managed with medication in that his hemoglobin A1c levels have fallen below the level indicating diabetes to a level indicating "increased risk" of diabetes. *Id.* at 83, 161, 214, and 402. He has reported symptoms related to his diabetes, most recently stating he experienced episodes of dizziness in June 2020. *Id.* at 28. He weighs 217.8 pounds, which correlates to a Body Mass Index ("BMI") of 28 for an individual of defendant's height, which is 6'2". *Id.* at 10; Gov't Opp. 9.

**B. FCI Danbury**

Towards the beginning of the pandemic, FCI Danbury had a serious outbreak of COVID-

19. *See Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *20 (D. Conn. May 12, 2020); *see also* Gov't. Opp 8 (acknowledging that at FCI, 89 inmates and 61 staff members previously contracted COVID-19). However, the outbreak now seems to be mostly under control, with the prison reporting one active case among inmates, and two cases among staff members. Gov't Opp. 8. The FCI Danbury warden reports that BOP's protocols for COVID-19 prevention have been implemented at FCI Danbury. Easter. Aff. ¶ 22, Gov't Opp. Ex. A, ECF No. 116-1.  This includes efforts to establish quarantine and isolation protocols (¶ 29), the increased distribution of cleaning supplies and frequency of cleanings (¶¶ 34-38), the availability of personal protective equipment to all staff and inmates (¶¶ 47-53), and screening and quarantine measures for staff members (¶¶ 54-59).

Escobar alleges that conditions at FCI Danbury continue to pose risks for COVID-19 transmission. *See* Def.'s Br. 1–6. He reports that he is housed in a dorm room with 65 inmates, and the beds are placed only three feet apart. *Id.* at 1. Escobar alleges generally that access to medical care is inadequate, and that inmates experience significant delays between reporting symptoms and being seen by a doctor. *Id.* at 3. He states that many staff and inmates are not wearing masks correctly or at all, that officers and inmates serving food are not wearing gloves, and that quarantines have not always been implemented correctly. *Id.* at 5–6. Escobar is also concerned about the potential for surfaces to become contaminated by asymptomatic inmates who have not been tested. *Id.* at 1.

## STANDARD OF REVIEW

The First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons warrant" such release. 18 U.S.C. § 3582(c)(1)(A)(i). The statute reads:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).[1]

The Sentencing Commission policy statement provides, in relevant part, that:

> [T]he court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . [(1)] extraordinary and compelling reasons warrant the reduction; . . . (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);[2] and (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The defendant bears the burden of demonstrating that he is eligible for compassionate release. *See United States v. Rivernider*, 3:10-cr-222 (RNC), 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019). Even if a defendant carries his burden, "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Tagliaferri*, 13 Cr. 115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (citing *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016) and *United States v. Rose*, 379 F. Supp. 3d 223, 225–26 (S.D.N.Y. 2019)).

---

[1] Escobar requested a reduction in his sentence with the FCI Danbury warden, which was denied on May 22, 2020. Def.'s Br. 53–55. The government does not dispute that he has complied with the First Step Act's exhaustion requirement. *See generally* Govt. Opp.. Thus, I do not discuss that requirement in my analysis below.

[2] The § 3142(g) factors are largely duplicative of those in § 3553(a). *See* § 3142(g). In addition, they require the court to consider "whether the offense is a crime of violence," "the weight of the evidence against the [inmate]," and "the nature and seriousness of the danger to any person or the community that would be posed by the [inmate's] release." *Id.* § 3142(g)(1)–(4).

4

The Sentencing Commission has issued a Policy Statement that defines "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("USSG"); *see United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *2 (D. Minn. July 25, 2019). Under this Policy Statement, "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness[.]" USSG § 1B1.13 cmt. n.1(A)(i). Alternatively, extraordinary and compelling reasons exist when "[t]he defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process[.]" USSG § 1B1.13 cmt. n.1(A)(ii). Such a condition must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," and it must be one "from which [the defendant] is not expected to recover." *Id.* Extraordinary and compelling reasons may also exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists . . . an extraordinary and compelling reason other than, or in combination with," the other listed reasons in the Guideline. *Id.* cmt. n.1(D).

This Policy Statement is "anachronistic" because it pre-dates the First Step Act itself. *Ebbers*, 2020 WL 91399, at *4. Some district courts have concluded that the court may make an "independent assessment" of whether "extraordinary and compelling reasons" for release are present, looking to the Policy Statement only for "guidance." *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[T]he district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release."). *But see Ebbers*, 2020 WL 91399, at *4 (deeming Policy Statement

5

"helpful in defining a vague standard" and concluding that its "descriptions of 'extraordinary and compelling reasons' remain current.").

Even if the court determines that extraordinary and compelling reasons exist, those reasons must be weighed against the relevant Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Weeks*, 16-CR-167 (LAP), 2020 WL 1862634, at *3 (S.D.N.Y. Apr. 14, 2020) ("Regardless of the theory of 'extraordinary and compelling reason' that a defendant proceeds under, the 18 U.S.C. § 3553(a) factors are relevant to whether compassionate release is warranted."); *United States v. Gotti*, 433 F. Supp. 3d 613, 615 (S.D.N.Y. Jan. 15, 2020) ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

The § 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) [the kinds of sentences and sentencing range provided for in the USSG;]
(5) any pertinent [Sentencing Commission policy statement;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

# DISCUSSION

Escobar has presented significant evidence of extraordinary and compelling circumstances. However, I find that the Section 3553(a) factors outweigh those circumstances, and thus his motion is denied.

### A. Extraordinary and Compelling Circumstances

Escobar has type 2 diabetes, a medical condition that places him at heightened risk for severe illness should he contract COVID-19.[3] *See* CDC, Coronavirus Disease 2019 (COVID-19) At Risk for Severe Illness (last updated July 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. The CDC states that its identification of type 2 diabetes as a risk factor is supported by the "strongest, most consistent evidence," drawn from multiple medical studies of the effects of the virus. *See* CDC, Evidence Table (last updated July 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html. Escobar's diabetes appears to be relatively well-controlled with medication. *See* Medical Records 83, 161, 214, and 402. But even assuming that his condition is stable with medication, this does not mean he no longer has diabetes. *See e.g. id.* at 12 (prescribing metformin for diabetes in July 2020). The CDC has labeled type 2 diabetes as a known risk factor, without positing that only uncontrolled cases pose a risk.

The parties dispute the sufficiency of FCI Danbury's COVID-19 prevention efforts. The facility was previously a hotspot with many cases, but BOP appears to have taken effective steps which have nearly eliminated the presence of the virus. Still, the prison setting inevitably poses

---

[3] Escobar is also overweight, but his BMI does not rise to the level of obesity, which is defined by a BMI of 30. While the CDC recognizes obesity as a risk factor, being overweight is not considered a risk factor. *See* CDC, Coronavirus Disease 2019 (COVID-19) At Risk for Severe Illness (last updated July 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Thus, Escobar's weight is not relevant to my analysis here, and I instead focus on his diabetes, which is a recognized risk factor.

increased risks for spread of a highly contagious disease. *See, e.g.*, United States v. Jenkins, No. 99-CR-00439-JLK-1, 2020 WL 2466911, at *7 (D. Colo. May 8, 2020) ("Correctional facilities—like cruise ships and long-term care facilities—simply are not designed for inmates to practice social distancing."). Even in facilities that have few or even no cases currently reported, there remains a risk of a sudden outbreak. *See United States v. Mueller*, No. 2:08-CR-00139-AB-1, 2020 WL 3791548, at *5 (E.D. Pa. July 7, 2020) ("If the Court waits to act until the BOP confirms its first case of COVID-19 at Allenwood, it may be too late for vulnerable inmates[.]").

Escobar has shown that he is high-risk of becoming severely ill if he should contract COVID-19. This constitutes an extraordinary and compelling reason to support his release. However, this extraordinary and compelling reason still must be weighed against the Section 3553(a) factors.

### B. Section 3553(a) Factors

Escobar's showing of extraordinary and compelling reasons for release is outweighed by the nature and circumstances of his offenses; his history and characteristics; and the need for the sentence to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense. *See* 18 U.S.C. Section 3553(a). I am not required to grant compassionate release even where the prisoner presents extraordinary and compelling circumstances if those circumstances are outweighed by Section 3553(a) factors. *See U.S. v. Thai*, 91-cr-838 (CBA), 7 (E.D.N.Y. Apr. 27, 2020) (citing *United States v. Hansen*, 07-CR-00520 (KAM), 2020 WL 1703672, at *10 (E.D.N.Y. Apr. 8, 2020); *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) ("The First Step Act was drafted using the word 'may,' not 'must.' In the end, whether to reduce a sentence is a matter that rests in the discretion of the court.").

Escobar committed a series of robberies, and the details of how he carried out those robberies are disturbing. Escobar or his accomplice threatened store employees and customers with

a firearm, and proceeded to tie their victims at both the arms and legs with zip ties. This was a pattern of repeat criminal conduct which impacted the lives of forty victims. Escobar's participation in numerous educational courses does present some indication of rehabilitation, but this is not a meaningful mitigating factor in the context of the offenses of conviction.

Escobar was sentenced to 163 months in prison. Judgment, ECF No. 94. He has served well under half of that sentence. Releasing him at this time would be a dramatic reduction in his sentence. Such a short sentence would not reflect the seriousness of his crimes, and would create sentencing disparities with others convicted of similar offenses.

The nature of Escobar's criminal conduct and the fact that he has served only a small fraction of his sentence outweigh any extraordinary and compelling reasons in support of compassionate release.

## CONCLUSION

For the reasons set forth above, Escobar's motion to reduce his sentence is denied.

SO ORDERED.

Dated: August 11, 2020  
      Brooklyn, NY

_____/s/_____  
Allyne R. Ross  
United States District Judge